IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| IN RE THE ESTATE OF ROBERT J. BRAUER, PERSONAL REPRESENTATIVE PATRICIA B. ETIENNE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:15-cv-04082-NKL |
| BANKERS LIFE AND CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court are the parties' cross motions for summary judgment, Docs. 46 and 48. For the following reasons, Defendant's motion is granted and Plaintiff's motion is denied.

**I.   Undisputed Facts**

  **A. Brauer's Claims History**

In January 2009, Robert Brauer[1] purchased a Limited Benefit Convalescent Care Policy, Policy No. 209,016,196 ("the Policy"), from Brenda Welsh, a sales agent for Defendant Bankers Life and Casualty Company. On February 23, 2009, the Policy was amended to increase the benefit and monthly premium amounts.

---

[1] Brauer passed away on November 9, 2015. His estate is now represented by his sister, Patricia B. Etienne.

Beginning in March 2010, Brauer required nursing home care services for diabetes and progressive dementia. He submitted an Application for Long Term Care Benefits, seeking reimbursement under the Policy for the care he received. Bankers Life paid him benefits totaling $72,000 for Covered Expenses incurred between March 22, 2010 and October 31, 2012.

Brauer continued to require nursing home care services after October 31, 2012 through his death on November 9, 2015. He requested reimbursement for Covered Expenses received after October 31, 2012, but Bankers Life refused to make any further payments, stating that the Maximum Benefit had been reached for that period of expense. On October 2, 2014, Brauer's counsel sent a Claim for New Period of Expense to Bankers Life, but the claim was denied in a letter dated November 21, 2014. Brauer subsequently appealed this denial, but the appeal was denied. All monthly premiums were paid on Brauer's Policy through his death on November 9, 2015.

### B. Brauer's Policy Terms

Under the operative terms of the Policy at the time Brauer first submitted his claim, the Maximum Benefit for Any One Period of Expense was $72,000; the Lifetime Maximum Benefit was $144,000. The Policy defines these terms as follows:

> **"Any One Period of Expense"** begins when a Family Member first incurs a charge for Covered Services under this policy. It ends on the earlier of: (a) the date the Family Member has, for 180 consecutive days, not received or required Covered Services for the same cause or causes for which the previous Period of Expense began; (b) the date the Maximum Benefit has been exhausted; OR (c) the date the Lifetime Maximum Benefit has been exhausted.

> **"Lifetime Maximum Benefit"** means the maximum amount of benefits We'll pay a Family Member for all Covered Expenses for all Period of Expenses. This amount is equal to two times the Maximum Benefit Amount for Any One Period of Expense.
>
> **"Maximum Benefit"** means the maximum amount We'll pay a Family Member for the combined total of all Covered Expenses during Any One Period of Expense. This amount is equal to the Maximum Daily Benefit amount times the Maximum Benefit Multiplier. The Maximum Benefit is shown in the Schedule.

[Doc. 49-3, p. 14]. The Policy states under the heading "**CONDITIONS ON ELIGIBILITY FOR BENEFITS**" that "We won't pay more than the Maximum Benefit for Any One Period of Expense for the total of all Covered Expenses. . . . We won't pay more than the Lifetime Maximum Benefit over the lifetime of the policy."

Later on in the Policy, under the heading "**RESTORATION OF POLICY BENEFITS**," it noted:

> This policy's Maximum Benefit for Any One Period of Expense will be restored when a Family Member no longer requires or receives treatment or services for 180 consecutive days for the same cause or causes for which a previous Period of Expense began. . . . The Lifetime Maximum Benefit does not restore.

[Doc. 49-3, p. 19].

## II. Discussion

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). There is no dispute of material fact in this case. Therefore, the only question is whether Brauer's Policy included coverage for the expenses he incurred after October 31, 2012.

3

## A. Interpretation of Insurance Contracts in Missouri

The interpretation of an insurance policy is a question of law to be determined by the Court. *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 903 (Mo. Ct. App. 2015). Missouri courts read insurance contracts "as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written." *Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. Ct. App. 2011). To determine the intent of the parties, the language in the contract is to be read according to its plain and ordinary meaning. *Mendota*, 456 S.W.3d at 903. To determine the ordinary meaning of a term, the Court may consult a standard English language dictionary. *Farmland Industries, Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. 1997). "'Definitions, exclusions, conditions, and endorsements are necessary provisions in insurance policies' and will be enforced where they are clear and unambiguous . . . ." *American States Preferred Ins. Co. v. McKinley*, 2009 WL 1139122, at *9 (W.D. Mo. April 28, 2009).

If an ambiguity exists the policy language will be construed against the insurer. *Id.* at 904. "'An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language of the policy.'" *Fanning v. Progressive Northwestern Ins. Co.*, 412 S.W.3d 360, 364 (Mo. Ct. App. 2013) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). "'To test whether the language used in the policy is ambiguous, the language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy.'" *Blumer*, 340 S.W.3d at 219 (quoting *Heringer v. Am. Family Mut. Ins. Co.*, 140 S.W.3d 100, 102 (Mo. Ct. App. 2004)).

## B. The Policy Unambiguously Limited Brauer's Recovery to $72,000

In interpreting the Policy, the Court must first determine whether it is ambiguous such that it should be construed in the light most favorable to the Plaintiff. When interpreting a contract, the Court must seek to give meaning to all words and provisions contained therein.

The Policy clearly states that Bankers Life will not pay "more than the Maximum Benefit for Any One Period of Expense for the total of all Covered Expenses." "Any One Period of Expense" begins when the insured "first incurs a charge for Covered Services under this policy. It ends *on the earlier of*: (a) the date the Family Member has, for 180 consecutive days, not received or required Covered Services for the same cause or causes for which the previous Period of Expense began; (b) the date the Maximum Benefit has been exhausted; OR (c) the date the Lifetime Maximum Benefit has been exhausted." [Doc. 49-3, p. 14 (emphasis added)]. This provision unambiguously states that a period of expense will end on the date the Maximum Benefit has been exhausted if that is the earliest occurrence of the three listed. This provision does not give the insured or the insurance company the option of choosing among the termination provisions when determining when the period of expense ends. As Brauer incurred the Maximum Benefit for Any One Period of Expense, $72,000 in coverage, before he met either of the other two limitations, his period of expense concluded on the date he incurred $72,000 in Covered Expenses.[2]

---

[2] Plaintiff implies at multiple points in the briefing that Bankers Life had a duty to explain the Policy provisions to Brauer. Missouri courts have consistently disclaimed an

5

Case 2:15-cv-04082-NKL   Document 57   Filed 08/01/16   Page 5 of 17

The Court must next decide whether this provision permitted Brauer to immediately initiate a second period of expense after reaching the first $72,000 in Covered Expenses. The Policy states that "'Any Period of One Expense' begins when a Family Member first incurs a charge for Covered Services under this policy." According to Bankers Life, as Brauer only began to incur charges for Covered Services one time, prior to his initial claim under the Policy, this provision prohibited him from immediately reinitiating a new period of expense. Plaintiff argues that a new period of expense begins once an insured first incurs additional Covered Expenses.

According meaning to all words in the Policy, it is clear that "Any One Period of Expense" cannot be immediately followed by a second period of expense for the same covered expenses. This interpretation would necessitate ignoring a multitude of provisions in the Policy.

First, as Bankers Life notes, the Policy states that a period of expense begins when the insured "first incurs a charge for Covered Services." Plaintiff's interpretation would have the Court insert an additional word into the definition, reading the provision to state that a period of expense begins when the insured first incurs a *new* charge for Covered Expenses.[3] Brauer incurred ongoing charges for same covered expenses after he made his claim under the Policy in March 2010 through the time of his death; as his ailments

---

insurance broker's duty to advise the insured on the terms of an insurance policy. *See Emerson Electric Co. v. Marsh McClennan Co.*, 362 S.W.3d 7, 12-13 (Mo. 2012); *Wilmington v. Lexington Ins. Co.*, 678 S.W.2d 865, 872 (Mo. Ct. App. 1984); *Murphy v. Northwest Mutual Ins. Co.*, 2005 WL 1421789, at *4 (W.D. Mo. June 13, 2005).

[3] Plaintiff references this rephrasing a multitude of times throughout the briefing, reading the Policy to state that a new period of expense begins once the insured "first incurs *additional* Covered Expenses."

6

were the same and he never stopped receiving treatment after treatment began in March 2010, he only "first incur[red] a charge for Covered Expenses" one time in March 2010.

Plaintiff's interpretation would also have the Court ignore that numerous terms are defined independently in the contract. If Plaintiff's interpretation was correct, there would be no reason for the "Any One Period of Expense" provision to distinguish between an ending on "the date the Maximum Benefit has been exhausted" and "the date the Lifetime Maximum Benefit has been exhausted," as an insured would be permitted to immediately initiate a new period of expense to reach the Lifetime Maximum Benefit upon receipt of the Maximum Benefit. Plaintiff's interpretation would also have the Court ignore the separate Policy limits clearly set out in the Schedule. If an insured could immediately reinitiate a new period of expense after reaching the Maximum Benefit for Any One Period of Expense, there would be no need for the Schedule to distinguish between the Lifetime Maximum Benefit and the Maximum Benefit for Any One Period of Expense, as the Lifetime Maximum Benefit would be functionally the only limitation on recovery.[4]

---

[4] Plaintiff contends that the benefits Schedule, definition of "Any One Period of Expense," and sections of the Policy addressing benefits eligibility and covered expenses provide coverage to Plaintiff which is taken away by Bankers Life's interpretation of the Restoration of Policy Benefits provision, which results in an ambiguity in the Policy that should be resolved in favor of coverage to the Plaintiff. As discussed in the remainder of this order, these provisions are not ambiguous when read in their entirety. According meaning to all terms in the Policy and reviewing the comprehensive claims procedure makes clear that policyholders are not guaranteed be able to recover the Lifetime Maximum Benefit in all circumstances. The limitations in the Policy are entirely consistent with the structure of other insurance policies. It is common for insurance policies to include, for example, caps on coverage for individuals, as well as overall limits on recovery. If a motorist owns an auto insurance policy with a $100,000 cap on

7

In order to accord meaning to every word in the Policy, the Maximum Benefit for Any One Period of Expense must be read to impose some limitation on recovery which differs from the Lifetime Maximum Benefit. The parameters of that limitation are set out in the Restoration of Policy Benefits provision, which states that "This policy's Maximum Benefit for Any One Period of Expense will be restored when a Family Member no longer requires or receives treatment or services for 180 consecutive days for the same cause or causes for which a previous Period of Expense began."

Plaintiff contends that the Restoration of Policy Benefits provision is insufficient for a number of reasons. First, Plaintiff argues that the word restore means "to bring back" into existence or original condition, and that existing coverage would not require restoration. This argument, however, ignores the difference between the Maximum Benefit for Any One Period of Expense and the Lifetime Maximum Benefit. While the Lifetime Maximum Benefit does not require restoration simply because the Maximum Benefit for Any One Period of Expense has been reached, in order for the insured to make an additional claim under the Maximum Benefit for Any One Period of Expense provision, the Maximum Benefit recovery limit must be restored.

Plaintiff next argues that the language of the Restoration of Policy Benefits provision states only that the maximum benefit amount is restored when the provision is satisfied, not the insured's eligibility for beginning a new period of expense. The

---

recovery per individual and a $300,000 cap on recovery for all passengers, the motorist is not entitled to a $300,000 recovery if he is the only person injured in an accident. Though the insured might incorrectly assume the policy affords him $300,000 in coverage in all circumstances, that assumption is irrelevant if it does not comport with the terms of the policy.

8

difference between the restoration of the maximum benefit amount and the insured's eligibility for beginning a new period of expense is no more than semantic and does not change the coverage available under the Policy. As discussed above, the Any One Period of Expense provision clearly states that it "begins when a Family Member first incurs a charge for Covered Services under this policy." Brauer only began to incur charges once, when he started receiving treatment for diabetes and progressive dementia and made a claim under the Policy. Therefore, after Brauer received his $72,000 in benefits, he could not automatically make a claim for a new period of expense under this provision because the triggering condition for a new period of expense, first incurring a charge for covered services, was not satisfied.[5]

Whether the Restoration of Policy Benefits provision functions to restore the maximum benefit amount, thereby allowing the insured to recover the maximum benefit amount for a second time without having to "first incur[] a charge" for services under the Policy, or permits the insured to begin a new period of expense by starting over and incurring a new "first" charge for covered services is irrelevant. Under both

---

[5] The fact that Brauer's claims did not entitle him to the full Lifetime Maximum Benefit available under the Policy does not make the Policy benefits illusory. Had Brauer gone 180 days without requiring or receiving care for the condition which triggered the first Period of Expense he would have been entitled to an additional $72,000 under the Policy. The fact that Brauer's specific ailments did not lend themselves to a 180 day reprieve does not mean that the triggering condition to renew the Maximum Benefit is itself unreasonable or that satisfaction of the 180 days without services will in most cases be impossible. It is entirely possible, for example, that an insured could require extended in home or nursing home care for a severe injury or invasive medical procedure, which would eventually enable the insured to live without assisted care for at least 180 days. If the insured subsequently underwent another procedure or developed an ailment such as Brauer's, the Policy would then entitle the insured to an additional $72,000 to reach the Lifetime Maximum Benefit.

9

interpretations, the Restoration of Policy Benefits provision permits an insured to recover the Maximum Benefit a second time only "when a Family Member no longer requires or receives treatment or services for 180 consecutive days for the same cause or causes for which a previous Period of Expense began." As Brauer never satisfied this condition, he was not permitted to recover the Maximum Benefit a second time.

*Kasoff v. Bankers Life and Casualty Company*, 2014 WL 6065932 (C.D. Cal. Nov. 13, 2014), supports the Court's interpretation of the Policy. In *Kasoff*, the plaintiff incurred a number of consecutive injuries which entitled her to coverage under language very similar to that in Brauer's Policy. The *Kasoff* policy specifically defined "Any One Period of Expense" as "begin[ning] when the Insured first incurs a charge for expenses covered under this policy. It ends when, for six consecutive months, the Insured is no longer receiving Long-Term Care Services for the same cause or causes for which the previous Period of Expense began." The *Kasoff* Court noted that "[e]xpanding the Policy to reset the Maximum Benefit amount payable for additional claims without regard to benefits already paid under the Policy . . . would increase the insured's benefit exponentially and well beyond the plain meaning of the Policy." *Id.* at *5. As in *Kasoff*, Brauer's Policy set specific limitations on the first Maximum Benefit payout which could only be exceeded to reach the Lifetime Maximum Benefit when the insured went 180 days without covered treatment.

Plaintiff contends that *Kasoff* underscores the ambiguity in Brauer's Policy because the *Kasoff* policy included the durational limitations on "Any One Period of Expense" within the definition itself, rather than including a separate provision. The fact

10

that the *Kasoff* policy may have included a clearer statement of the duration of Any One Period of Expense does not mean, however, that the terms of Brauer's Policy are ambiguous. Brauer's Policy specifically distinguished between the Maximum Benefit and Lifetime Maximum Benefit and stated that "Any One Period of Expense" ended when the Maximum Benefit was reached. The only reasonable interpretation of the Policy when considered in its entirety is that the insured does not become eligible to receive the Maximum Benefit for a second time to reach the Lifetime Maximum Benefit until the insured goes 180 days without treatment for Covered Expenses. *See Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004) (noting that a document was "not ambiguous because its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation").

The Court's interpretation of the Restoration of Policy Benefits provision is further bolstered by the Policy's "Elimination Period." "'**Elimination Period**' means the number of days a Family Member must receive covered Facility Care or Home and Community Based Care services before benefits are payable. The Elimination Period has to be satisfied for Any One Period of Expense for each Family Member under this policy. . . . It restores when benefits are restored." [Doc. 49-3, p. 13 (emphasis in original)]. Functionally, the Elimination Period requires that the insured receive 30 days of services before Bankers Life is required to pay benefits. The Elimination Period is referenced in the Schedule prior to the Policy limits on the Maximum Benefit for Any One Period of Expense and the Lifetime Maximum Benefit.

11

Even if Plaintiff's interpretation of the Policy was correct and Brauer was permitted to immediately reinitiate a claim under the Policy after his Maximum Benefit for Any One Period of Expense was satisfied, Brauer would still be required to satisfy the Elimination Period, as clearly set out in the Schedule. The Policy's definition of Elimination Period makes clear that the 30 day period may not restart after an insured receives the Maximum Benefit for Any One Period of Expense until after "benefits are restored." This provision is unambiguous in its reference to the Restoration of Policy Benefits provision, which sets out how the insured can recover the Maximum Benefit for Any One Period of Expense for a second time.

As the Policy clearly limited Brauer's recovery on his claim to $72,000, Bankers Life was not required to compensate Plaintiff for expenses incurred in excess of $72,000, and the insurance company's refusal to pay was not vexatious. *See Progressive Preferred Ins. Co. v. Reece*, 2016 WL 3176482, at *6 (W.D. Mo. June 7, 2016) ("[W]here an insurer had no duty to pay under the insurance policy, there cannot be a claim for vexatious refusal to pay.").

### B. The Policy Is Not a Long-Term Care Insurance Policy

Plaintiff contends that the Policy constitutes a long-term care insurance policy as defined by Missouri law. Long-Term Care Insurance Policies are statutorily required to meet certain standards and contain certain provisions.

The Missouri long-term care insurance policy statute, R.S.Mo. § 376.110.2(5), states that long-term care insurance is "any insurance policy or rider advertised, marketed, offered or designed to provide coverage for not less than twelve consecutive

12

months . . . . [A]ny product advertised, marketed, or offered as long-term care insurance shall be subject to the provisions of sections 376.1100 to 376.1130."

The terms of Brauer's Policy make clear that it is not a long-term care insurance policy. On the Policy Schedule, which sets out the limitations on Bauer's coverage, it notes that the Maximum Benefit for Any One Period of Expense is "Based upon a Maximum Benefit Multiplier of 360." This provision makes clear that Brauer's $72,000 Maximum Benefit for Any One Period of Expense was calculated by multiplying the Policy's $200 Maximum Daily Benefit by 360 days. As 360 days is less than one year, the Policy was not designed to provide coverage for at least twelve consecutive months to qualify as a long-term care insurance policy under the statute. Though Brauer did not receive $200 per day to reach the Maximum Daily Benefit and therefore had coverage for more than one year, the statute does not indicate that the actual duration over which an insured receives benefits is the operative issue for determining whether a policy qualifies as long-term care insurance. The design of the Policy was clearly not to guarantee coverage for at least twelve consecutive months.

Moreover, on page one of the Policy it clearly states that "**This policy is not a . . . Long-Term Care Insurance Policy.**" [Doc. 49-3, p. 1 (emphasis in original)]. It also states that "The insurance [provided by the Policy] may NOT cover all of the costs associated with long term care incurred by You during the period of coverage. You are, therefore, advised to **READ THIS POLICY CAREFULLY AND REVIEW ALL POLICY LIMITATIONS!**" *Id.* (emphasis in original). Plaintiff does not contend at

13

any point that Brauer was marketed the Policy as a long-term care policy.[6] Given the Policy's clear disclaimer that it is not a long-term care insurance policy and notation on the Policy Schedule that it is based on a 360 day Maximum Benefit Multiplier, the Policy does not qualify as long-term care insurance under R.S.Mo. § 376.110.2(5).[7]

Plaintiff contends that the Policy constituted a long-term care insurance policy because the District Court of Arizona held in *Rowe v. Bankers Life and Casualty Company*, 572 F.Supp.2d 1138 (D. Ariz. 2008), that nearly identical language constituted a long-term care policy. However, *Rowe* was decided under the Arizona long-term care policy statute, which defined long-term care insurance based solely on the services covered by the policy, not the duration of the marketed coverage. If an insurance policy marketed in Arizona included the coverage set out in the long-term care insurance statute, the insurer was required to provide coverage for at least 24 months. The Missouri long-term care policy statute, however, defines long-term care policies by the duration of coverage provided. As discussed above, Brauer's Policy did not meet the Missouri

---

[6] Plaintiff does state that when Brauer began to require nursing home care services in March 2010 he submitted an Application for Long Term Care Benefits. However, Plaintiff does not contend that the title of this application constituted a marketing of the Policy as a long-term care policy. As Plaintiff does not indicate at any point that the Policy was marketed to Brauer as providing long-term care benefits, the Court concludes that the title of this benefits application form alone does not indicate that the Policy constituted a long-term care policy such that it was required to satisfy the long-term care insurance statutes.

[7] As the Policy does not constitute a long-term care insurance policy, Plaintiff's arguments concerning 20 CSR 400-4.100(6)(E)'s requirement that long-term care insurance policies "set forth a description of the limitations or conditions . . . in a separate paragraph of the policy or certificate and shall label such paragraph 'Limitations or Conditions on Eligibility for Benefits'" is irrelevant.

statutory definition to be considered a long-term care policy, and therefore *Rowe* is not dispositive of this case.

### C. The Restoration of Policy Benefits Provision Is Not an Exclusion or Condition on Eligibility for Benefits

Plaintiff contends that even if the Policy is not considered to be a long-term care insurance policy, it still violates R.S.Mo. 376.775.1(5), which requires exceptions and reductions of indemnity to be "set forth in the policy and . . . either included with the benefit provision to which they apply, or under an appropriate caption such as 'EXCEPTIONS', or 'EXCEPTIONS AND REDUCTIONS', provided that if an exception or reduction specifically applies only to a particular benefit of the policy, a statement of such exception or reduction shall be included with the benefit provision to which it applies."[8]

An exclusion in an insurance policy "exclude[s] from coverage otherwise covered risks." *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007). Exclusions are not synonymous with limits of liability, which "are common in any insurance plan regardless of policy type and do not create a conflict with the grant of insurance." *Staufenbiel v. Amica Mut. Ins. Co.*, 2015 WL 14569876, at *4 (E.D. Mo. March 30, 2015). The Policy limit being disputed by the parties does not constitute a coverage "exclusion" or "exception" because it does not set out an instance in which an otherwise covered service be excluded from coverage. The Policy does contain

---

[8] To the extent that this statute requires the Restoration of Policy Benefits provision to be clearly identified in the Policy, the provision satisfied the statute. The provision is clearly identified under the heading "**RESTORATION OF POLICY BENEFITS**," along with all of the other headings setting out the parameters on Brauer's coverage.

exclusions which are not at issue in this lawsuit. For example, it states that Bankers Life will not pay for expenses incurred due to war, intentionally self-inflicted injuries while sane, or for services or supplies provided by a member of the immediate family or a person who ordinarily lives in your home. [Doc. 49-3, p. 18]. These exclusions address situations in which Bankers Life will not pay for facility care or home health care which would otherwise be covered by the terms of the Policy.

Unlike an exclusion, the Restoration of Policy Benefits provision sets out the circumstances under which the insured will be able to exceed the $72,000 Maximum Benefit for Any One Period of Expense to recover the Lifetime Maximum Benefit. Just as the Lifetime Maximum Benefit does not constitute a coverage "exclusion" for expenses in excess of $144,000, the Restoration of Policy Benefits provision does not exclude expenses in excess of the Maximum Benefit for Any One Period of Expense, but outlines the circumstances under which the Maximum Benefit limit may be recovered for a second time.

### D. The Policy Does Not Violate the MMPA

Plaintiff last argues that Bankers Life's marketing of the Policy amounts to the use of deception, fraud, false pretense, false promise, misrepresentation, or unfair practice pursuant to the Missouri Merchandising Practices Act ("MMPA"). However, the MMPA specifically disclaims any liability for "[a]ny institution, company, or entity that is subject to chartering, licensing, or regulation by the director of the department of insurance . . . ." R.S.Mo. § 407.020.2(2). Bankers Life is regulated by the Department of Insurance, and therefore the MMPA does not apply to Plaintiff's claim.

16

## III. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is granted on all claims and Plaintiff's motion for summary judgment is denied.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: August 1, 2016
Jefferson City, Missouri